ELIJAH TURNER et al.

*v.*

WILLIAM B. HAUSE et al.

*Opinion filed October 25, 1902—Rehearing denied December 11, 1902.*

1. REAL PROPERTY—*effect of section 13 of Conveyance act.* Under section 13 of Conveyance act, if an estate is devised to a named person without the use of the words "heirs and assigns" the devisee will take a fee simple estate of inheritance, unless it appears from the will by express words, or by construction or operation of law, that a less estate than a fee is limited.

2. WILLS—*devise construed as passing life estate only.* A devise to "my son, Horace Stone Hause," of certain described land, "on the same principles as that of his brother, George Willis Hause, not being subject to sale, transfer or liability for debts, but to descend to his bodily heirs, and, in case of none, to his. brothers and sisters," passes a life estate, only, to Horace Stone Hause with remainder to the heirs of his body, notwithstanding the devise to the brother

is to "George Willis Hause, my son, *and to his heirs,*" since the words "on the same principles" refer to the provisions against alienation, and not to the word "heirs."

3. DEEDS—*life tenant cannot convey a greater estate than he possesses.* A deed from a life tenant passes only a life estate to the grantee, and the possession of the latter is, in contemplation of law, the possession of the remainder-man, the same as was the possession of the original life tenant.

4. LIMITATIONS—*section 6 of Limitation act must be construed in connection with section 3.* Section 6 of the Limitation act, relating to possession and payment of taxes for seven years under claim and color of title, must be construed in connection with section 3 of that act, the third clause of which provides that the right of a remainder-man to bring an action to recover land, so far as it is affected by the Limitation act, shall be deemed to accrue when the intermediate estate would have expired by its own limitation.

5. SAME—*statute does not run against remainder-man while life tenant lives.* The Statute of Limitations does not begin to run against a remainder-man until the death of the life tenant.

6. EVIDENCE—*when certified copy of will is admissible.* An objection that a certified copy of a will is not admissible in evidence because no court was shown to have been in existence to make the order of probate attached to the copy is without force, where the order shows in what probate court it was rendered and by what judge, the date, and jurisdiction of the parties.

APPEAL from the Circuit Court of Williamson county; the Hon. A. K. VICKERS, Judge, presiding.

This is a bill for partition of 160 acres of land in Williamson county, Illinois, described as the north-east quarter of section 3, township 9 south, range 4 east of the third principal meridian, brought by appellees against appellants. Appellants filed a joint and several answer, to which replication was filed. Upon the hearing of the cause, the court below rendered a decree for partition in accordance with the prayer of the bill, finding appellees to be the owners of the property in the proportions therein claimed, and also finding that appellants have no interest in the premises in question. The present appeal is prosecuted from the decree so rendered.

The material facts are substantially as follows: One Peter Hause, who is shown to have been a resident of

199—30

Saline county in his lifetime, was the original patentee of the quarter section from the government of the United States, the patent having been issued on March 1, 1851, and the entry of the land having been made on August 20, 1849. A tract-book was introduced in evidence by the appellees upon the hearing below, being a record of the recorder's office of Williamson county, entitled "Tract-book Original Entries," which shows the date of the entry of the land as having been on August 20, 1849, and Peter Hause as being the person by whom it was entered, and also showing the description of the premises, and the number of acres therein contained. Peter Hause made a will dated September 27, 1850. He died in January, 1851, and his will was admitted to probate in the county court of Saline county on February 3, 1851. When Peter Hause died, he left a widow and four children— two sons, George Willis Hause and Horace Stone Hause, and two daughters. The fifth and sixth paragraphs of his will are as follows, to-wit:

"*Fifth*—As to the following named real estate which I am possessed of, lying in township 8 S., R. 6 E., I ordain as follows, viz., to George Willis, my son, and to his heirs, I give the west half of the north-west quarter and the north-east quarter of north-west quarter of section 3, and the east half of the north-east quarter of section 4, all in T. 8 S., R. 6 E., the above tracts not subject to sale and (or) in anywise liable to the debts of said George Willis, but to descend to his bodily heirs at his death, and, in case of no heirs, to his brother and sisters.

"*Sixth*—My son, Horace Stone Hause, to have the following tract of land, viz., the north-east quarter of section 3 in township 9 south, range 4 east, containing 166.69 acres, more or less, on the same principles as that of his brother, George Willis Hause, not being subject to sale, transfer or liability for debts, but to descend to his bodily heirs, and, in case of none, to his brother and sisters."

Horace S. Hause died intestate on January 29, 1899, in Saline county, of which he was a resident in his lifetime. He left six children, being the appellees herein, whose names and the dates of whose births are as follows: Sarah Jane Shaw, formerly Sarah Jane Hause, born March 2, 1859; William Burkett Hause, born April 27, 1863; Charles Valentine Hause, born February 14, 1867; George Willis Hause, born April 29, 1872; Hiram Bradford Hause, born December 24, 1877; Loren Kent Hause, born August 19, 1881, all of whom were living when the bill in this case was filed, and are the only heirs-at-law of Horace Stone Hause, Loren Kent Hause being a minor when the bill herein was filed.

By warranty deed dated July 18, 1860, Horace S. Hause and his wife of Saline county, Illinois, conveyed to William L. Stilley of Williamson county, Illinois, for an expressed consideration of $600.00, the quarter section here in controversy, described therein as containing 160 acres, which said deed was recorded in the recorder's office of Williamson county on December 24, 1860. On October 24, 1864, William L. Stilley and his wife of Williamson county, Illinois, by warranty deed of that date, conveyed to Elijah Turner of Saline county, Illinois, for an expressed consideration of $2700.00, the quarter section of land here in controversy, and other lands, which said deed was recorded in said recorder's office on December 28, 1865. Elijah Turner, being one of the appellants herein, claims to be still the owner of between 38 and 39 acres of the tract in question. He conveyed the rest of the tract to other parties, under whom, by virtue of various conveyances and by inheritance from deceased persons, the other appellants herein, to-wit, Hiram P. Duty, Joseph Hill, Samuel Hill and Emaline Hill, claim to own the balance of the 160-acre tract not claimed by Elijah Turner. The appellants claim title under the limitation laws. Their contention is that the appellant, Elijah Turner, and those holding under him, have been in posses-

sion of the premises under claim and color of title made in good faith, and paid all the taxes thereon for a period of thirty-five years or more. In their answer the appellants deny that they ever had any notice of any opposing claim of appellees, or any one else, until the commencement of this suit, and they set up and rely upon sections 1 and 6 of chapter 83 of the Revised Statutes, being the act in regard to limitations.

WILLIAM W. CLEMENS, and W. H. WARDER, for appellants.

CHOISSER, WHITLEY & CHOISSER, and DUNCAN & DENISON, for appellees.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The first question presented by the record is, what interest did Horace S. Hause, the father of the appellees, take in the land in question under the will of his father, Peter Hause?

The sixth section of the will is in the following words: "My son, Horace Stone Hause, to have the following tract of land, * * * on the same principles as that of his brother, George Willis Hause, not being subject to sale, transfer or liability for debts, but to descend to his bodily heirs, and, in case of none, to his brother and sisters." As to the tract of land here in controversy, given to Horace Stone Hause, he alone is to have it, without any statement that he and his heirs are to have it. No words of inheritance are used in connection with the devise to Horace Stone Hause. Section 13 of the Illinois act in regard to conveyances provides as follows: "Every estate in lands, which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be. not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to

have been granted, conveyed or devised by construction or operation of law." The court can only inquire, whether an estate less than a fee is limited by express words or granted, conveyed or devised by construction or operation of law, where words theretofore necessary to transfer an estate of inheritance are not used. Where an estate is devised to A without the use of the words, "heirs and assigns," A will take a fee simple estate of inheritance, unless the will or instrument of conveyance reduces the estate to an estate less than a fee by express words, or by construction or operation of law. (*Wolfer* v. *Hemmer*, 144 Ill. 554; *Saeger* v. *Bode*, 181 id. 514; *Smith* v. *Kimbell*, 153 id. 368.) The fee devised to Horace S. Hause may be limited by construction, or by express words in a subsequent part of the will, because words, necessary to transfer an estate of inheritance, are not used in the devise of such fee. Hence, the fee, devised to Horace S. Hause, may be reduced to a less estate by the words used subsequently in the sixth clause, to-wit: "but to descend to his bodily heirs, and, in case of none, to his brother and sisters." The words, "on the same principles as that of his brother, George Willis Hause," as used in section 6, do not refer to the words, "and to his heirs," as used in section 5; but they refer to the following words in section 5: "The above tracts not subject to sale or in anywise liable to the debts of said George Willis, but to descend to his bodily heirs at his death, and, in case of no heirs, to his brother and sisters."

It being settled, then, that there is nothing in the character of the devise of the fee to Horace S. Hause, which prevents a limitation of that fee by subsequent words used in the sixth clause, the question arises, what estate less than a fee was devised to Horace S. Hause by the sixth clause. There can be no other answer to this question, under the decisions of this court, than that Horace S. Hause took a life estate only, with remainder in fee to the heirs of his body. In *Blair* v. *Vanblarcum*,

71 Ill. 290, where a testator gave, bequeathed and devised unto his only daughter "and to the heirs of her body, and to their heirs and assigns," all of his real estate, it was held that she took under such devise a simple life estate, with remainder over to the heirs of her body in fee simple absolute, and that the limitation to her heirs was valid and binding. At common law a devise to a devisee and the heirs of his body created an estate tail general, leaving in the heirs-at-law of the devisor the reversion in case of an entire failure of issue; but, under the provisions of the sixth section of our statute in relation to conveyances, such devise would vest in the devisee only a life estate with remainder in fee to the heirs of his body, and leaving the reversion, in case of an entire failure of issue, in the heirs-at-law of the devisor. (*Lewis* v. *Pleasants*, 143 Ill. 271; *Frazer* v. *Supervisors*, 74 id. 282; *Cooper* v. *Cooper*, 76 id. 57; *Lehndorf* v. *Cope*, 122 id. 317).

In construing provisions of this kind, the words "his bodily heirs," have no other or different meaning than the words "heirs of his body." In *Dinwiddie* v. *Self*, 145 Ill. 290, it was held that a conveyance of land to a woman "and her bodily heirs," under section 6 of the Conveyance act, would convey to her only a life estate, with a contingent remainder in fee to her children, if any such should be born, and, in default of heirs of her body, the estate in remainder would lapse, and on her death the land would revert to her grantor.

In *Kyner* v. *Boll*, 182 Ill. 171, it was held that a conveyance to a grantee and her "bodily heirs" and assigns creates an estate in fee tail general at common law, but, since the abolition of estates tail, passes, under section 6 of the Conveyance act, an estate for the grantee's natural life only, with the remainder in fee simple absolute to the persons to whom the estate tail would, on the death of the grantee, first pass at common law. So, in the case at bar, the devise being to Horace Stone Hause, "not being subject to sale, transfer or liability for debts, but to

descend to his bodily heirs, and, in case of none, to his brother and sisters," he took an estate for his natural life only with the remainder in fee simple absolute to his children, the appellees herein. When the first child, appellee Sarah Jane Shaw, (then Sarah Jane Hause,) was born, she took an estate in fee simple subject to the life estate of her father, Horace S. Hause, and subject also to be opened to let in after-born children of her father, who would become tenants in common of the fee with her. (*Kyner* v. *Boll, supra*). Her five brothers, who were born after she was born, took each a fee simple title to an undivided portion of the premises in question, subject to the life estate of their father.

It follows that the appellees here, as they respectively came into being, were remainder-men or reversioners, holding the fee subject to the life estate of their father; and the only interest of Horace S. Hause in the premises was that of a life tenant.

*Second*—When, therefore, Horace S. Hause executed a deed in 1860 to William L. Stilley, Stilley took no greater estate than that of Horace S. Hause, to-wit, an estate for the life of Horace S. Hause. So, also, in October, 1864, when Stilley executed a deed of the premises to the appellant, Elijah Turner, Turner took only an estate in the premises for the life of Horace S. Hause.

In *Mettler* v. *Miller*, 129 Ill. 630, we said (p. 642): "The settled doctrine, both upon authority and upon principle, is, that the possession of land by a tenant for life cannot be adverse to the remainder-man or reversioner; and if he conveys to a third person by words purporting to pass the absolute property, the possession of the purchaser is not and cannot be, during the continuance of the life estate, adverse to the remainder-man or reversioner, so as to set the Statute of Limitations running against such remainder-man or reversioner, but after a life estate falls in, the possession will be adverse as to a remainder-man or reversioner. The reason of the rule first stated is,

that the possession of the tenant for life, or his vendee during the continuance of the life tenancy is, in contemplation of law, the possession of the remainder-man or reversioner, and the latter cannot, during the life of the person for whose life the life estate is, bring an action against the person in possession under such life tenant, to recover possession of the premises. All statutes of limitation are based on the theory of *laches*, and no *laches* can be imputed to one who has no remedy or right of action, and to hold the bar of the statute could run against the title of a person so circumstanced would be subversive of justice, and would be to deprive such person of his estate without his day in court." (See also *Orthwein* v. *Thomas*, 127 Ill. 554; *Rohn* v. *Harris*, 130 id. 525; *Frazer* v. *Supervisors*, 74 id. 282; *Meacham* v. *Bunting*, 156 id. 586; *Beattie* v. *Whipple*, 154 id. 273; *Borders* v. *Hodges*, id. 498; *Barrett* v. *Stradl*, 73 Wis. 385; *Safford* v. *Stubbs*, 117 Ill. 389; *Enos* v. *Buckley*, 94 id. 458; 1 Am. & Eng. Ency. of Law,— 2d ed.—pp. 807-809).

Section 3 of the Limitation law of this State provides that "the right to make an entry or bring an action to recover land shall be deemed to have first accrued at the times respectively hereinafter mentioned, that is to say: * * * Third—When there is such an intermediate estate, and in all other cases when the party claims by force of any remainder or reversion, his right, so far as it is affected by the limitation herein prescribed, shall be deemed to accrue when the intermediate or precedent estate would have expired by its own limitation," etc. (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2603). Section 6 of the Limitation act, in relation to possession and payment of taxes for seven years under claim and color of title made in good faith, which is relied upon by the appellants in this case, is a part of the same act which contains section 3, as above quoted, and must be construed in connection with section 3. Appellees were remainder-men or reversioners, holding the fee simple title subject

to the life estate of their father, Horace S. Hause. Until the death of their father on January 29, 1899, their right to make an entry or to recover the land did not accrue; and the present bill for partition was filed as early as July, 1899. The possession of Horace S. Hause, who was merely a life tenant, was, in contemplation of law, the possession of the appellees as remainder-men or reversioners. The possession of Stilley and of the appellant, Elijah Turner, and of the other appellants deriving title from them, was also the possession of the appellees as remainder-men or reversioners, the same as was the possession of their father, the tenant for life. In other words, the Statute of Limitations, upon which appellants rely, could not run against appellees, being remainder-men or reversioners, until the life estate of Horace S. Hause fell in, that is to say on and after January 29, 1899. The possession of appellants could not and did not become adverse as to appellees until the end of the life estate, and, hence, has only been adverse during the few months between January 29, 1899, and July, 1899. In the case of *Higgins* v. *Crosby*, 40 Ill. 260, decided in 1866, we said: "There is no dispute that possession and payment of taxes, under claim and color of title for seven successive years, will bar a recovery in all cases where there is a present right of possession during the period for which the statute is required to run and its requirements are performed. The act of 1839 has been repeatedly held by this court to be a limitation law, and it can only be sustained upon that ground. And it is believed to be universally true that the bar of the statute can never be invoked, unless the party against whom it is sought to be used has had the opportunity of asserting his right during the statutory period. If the right is of such a character that a party is not entitled to make an entry, the statute can never run. It can only begin after the right to enter has accrued. Where the title sought to be defeated by the bar is a reversion or a remainder, the

holders of such titles have no right of entry, and, having none, they are guilty of no *laches* in failing to make an entry, or in asserting the right. Such titles are not present and existing rights of possession, but only a present interest, with a future right of possession. It would be unprecedented to hold that a right of entry was barred where such a right had never accrued. A party cannot be prejudiced by the non-assertion of a right that does not exist. * * * When the particular estate is spent, the bar falls with that estate, and the right of entry then accrues to the remainder-man or reversioner, and then, and not till then, the statute begins to run against him."

*Third*—The objection is made by the appellants to the certified copy of the will of Peter Hause, introduced in evidence by the appellees upon the hearing below, upon the alleged ground that no court was shown to have been in existence to make the order of probate attached to the copy. This objection is without force. The exact language of the order, certified to and admitted in evidence, is: "at a court of probate for said county held at the court house on the third day of February, A. D. 1851. On this day personally appeared before the Hon. Samuel Elder, county judge of said county, sitting as a court of probate in and for said county," etc. This complies with the requirements of the law, which entitled it to be admitted in evidence. In *Phillips* v. *Webster*, 85 Ill. 146, it was held that, where the copy of a decree shows in what court it was rendered, and by what judge, and jurisdiction of the parties, in a case where the court has jurisdiction of the subject matter, it is admissible in evidence for a collateral purpose, although no *placita* appears; and that a complete transcript of the record is not necessary in such a case, the suit not being upon the decree.

We are of the opinion, that the decree of the circuit court of Williamson county was correct, and, accordingly, that decree is affirmed.                     *Decree affirmed.*